**MISSISSIPPI CHEMICAL CORPORA-TION, Plaintiff-Appellant,**

v.

**EQUAL EMPLOYMENT OPPORTUNI-TY COMMISSION, Defendant-Appellee.**

**No. 84–7778.**

United States Court of Appeals, Eleventh Circuit.

March 25, 1986.

Walter W. Christy, Kullman, Inman, Bee & Downing, New Orleans, La., Richard I. Lehr, Birmingham, Ala., for plaintiff-appellant.

Constance L. Dupre, Allyson K. Duncan, Thomas L. Gray, Karen MacRae Smith, Washington, D.C., Jerome Rose, Birmingham, Ala., John L. Ross, Susan B. Reilly, Washington, D.C., for defendant-appellee.

Before KRAVITCH and HATCHETT, Circuit Judges, and MORGAN, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In *EEOC v. Shell Oil Co.,* 466 U.S. 54, 64, 104 S.Ct. 1621, 1628, 80 L.Ed.2d 41, 54 (1984), the Supreme Court held that the existence of a charge that meets the requirements set forth in section 706(b), 42 U.S.C. § 2000e–5(b) [42 U.S.C.S. § 2000e–5(b) ], is a jurisdictional prerequisite to judicial enforcement of a subpoena issued by the Equal Employment Opportunity Commission (EEOC). The question presented in this case is whether an employer may litigate the validity of a commissioner charge before the EEOC seeks to enforce a subpoena based upon the charge. The district court held that an employer could not do so because the existence of a commissioner charge, along with "some investigation," does not present a ripe controversy. We affirm.

## I. A Commissioner Files a Charge

On February 12, 1981, then-EEOC Chair, Eleanor Holmes Norton, filed a charge with the Commission alleging that Mississippi Chemical Corporation was engaged in a pattern or practice of unlawful discrimination.[1] The charge alleged that Mississippi Chemical had violated sections 703 and 707 of the Civil Rights Act of 1964 at least since January 1, 1976, "with unlawful employment practices occurring at or controlled from its facilities located in Yazoo City and Pascaguola [sic], Mississippi." The charge alleged discrimination against blacks and women on the basis of race and/or sex with respect to recruitment, hiring, job assignments, promotions and other terms, conditions, and benefits of em-

---

1. Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17, as amended, creates the EEOC and describes the mechanisms for the EEOC "to investigate and act on a charge" that an employer has engaged in "a pattern or practice" of employment discrimination. A commissioner may file a charge naming an employer on the basis of a "pattern or practice" of discrimination pursuant to 42 U.S.C. § 2000e–6(e).

"[A] charge is filed with the Commission, not with or against the allegedly discriminating employer." *Shell Oil,* 466 U.S. at 84, 104 S.Ct. at 1638, 80 L.Ed.2d at 66 (O'Connor, J., concurring in part and dissenting in part). "[A] charge of employment discrimination is not the equivalent of a complaint initiating a lawsuit." 466 U.S. at 68, 104 S.Ct. at 1630, 80 L.Ed.2d at 56.

ployment.[2] The charge was referred to the EEOC's Birmingham, Alabama, district office for investigation.

## II. Mississippi Chemical Brings Suit

On November 29, 1982, Mississippi Chemical brought suit in the Eastern District of Arkansas, seeking injunctive relief directing the EEOC to cease and desist from investigating the charge on the basis that the charge was invalid under the standards set forth in *Shell Oil.* The district court denied relief, but permitted Mississippi Chemical to reapply for relief once EEOC issued an administrative subpoena. On February 28, 1983, the Acting Director of the Birmingham District Office issued a *subpoena duces tecum* directing Mississippi Chemical to produce certain records relating to the charge. On March 8, 1983, Mississippi Chemical filed a petition to revoke or modify that subpoena with the EEOC's Birmingham District Office. On April 12, 1983, the Birmingham District Office declined to revoke or modify the subpoena. On April 20, 1983, Mississippi Chemical appealed the denial to the EEOC's general counsel. On December 8, 1983, general counsel refused to revoke or modify the subpoena.

Mississippi Chemical did not comply with the subpoena. By letter dated April 27, 1984, the EEOC advised Mississippi Chemical that the EEOC was willing during the next ten days to work out by telephone the details of transmitting and receiving the records requested by the subpoena. The EEOC advised Mississippi Chemical that if no arrangements were made within the ten-day period, it would take all appropriate steps to enforce the subpoena. The EEOC has not sought enforcement of the subpoena.

Mississippi Chemical brought suit in district court seeking a declaratory judgment that the EEOC's commissioner's charge is invalid on its face under the standards set forth in *Shell Oil Co.* Mississippi Chemical alleged jurisdiction under the Fourth and Fifth Amendments to the Constitution, Title VII, the Administrative Procedure Act (APA) (5 U.S.C. §§ 702, 704), and the Declaratory Judgment Act (28 U.S.C. § 2201). After staying proceedings for thirty days to give the EEOC an opportunity to seek judicial enforcement of its administrative subpoena, and, focusing on ripeness, the district court dismissed the suit for lack of ripeness.

## III. Contentions

Mississippi Chemical relies heavily on *Shell Oil* for the proposition that the commissioner charge is invalid on its face because of insufficient specificity in the charges. Mississippi Chemical contends that, because the EEOC does not have "plenary" investigatory power, the issuance of an invalid charge is final agency action and the assertion of authority that it does not have. Mississippi Chemical argues that the matter is ripe for review under the three-fold test of *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1966).

EEOC contends that *Federal Trade Commission v. Standard Oil Company of California, (SOCAL ),* 449 U.S. 232, 239, 101 S.Ct. 488, 493, 66 L.Ed.2d 416, 424 (1980) is dispositive. In *SOCAL,* the Supreme Court held that issuance of a Federal Trade Commission (FTC) commissioner's charge is not "final agency action." The

---

**2.** The charge alleged specifically that "the employer's unlawful discriminatory practices include, but are not necessarily limited to:

(1) Failing or refusing to recruit or select Blacks and women for positions on an equal basis with whites and men because of their race and/or sex.

(2) Assigning and/or restricting Blacks and women to positions of lower pay, lesser responsibility, and few opportunities for advancement than position to which similarly

qualified whites and men are assigned because of their race and/or sex.

(3) Failing to provide Blacks and women with opportunities for promotion equal to those afforded whites and men because of their race and/or sex.

(4) Maintaining discriminatory policies and practices and other terms and conditions of employment which operate to disadvantage Blacks and women because of their race and/or sex.

EEOC concludes that Mississippi Chemical's claim is not ripe for review.[3]

Mississippi Chemical distinguishes *SOCAL* on two grounds. First, Mississippi Chemical relies on its argument that unlike the FTC, which has plenary investigative authority, the EEOC must issue a facially valid charge to initiate any kind of proceeding. *See Shell Oil,* 466 U.S. at 64, 104 S.Ct. at 1628, 80 L.Ed.2d at 54 (linking EEOC's investigatory power to existence of outstanding charges). Second, Mississippi Chemical contends that the Court's concern in *SOCAL,* 449 U.S. at 241, 101 S.Ct. at 493, which was not to interfere with an agency's process of correcting its own mistakes and applying its expertise, does not apply to the issuance of an invalid charge by the EEOC; the EEOC's expertise cannot be utilized to cure the charge's defects or retroactively establish its jurisdiction.

## IV. Discussion

The court uses four factors to assess whether a case is ripe for review:

(1) whether the issues presented are purely legal; (2) whether the challenged agency action constitutes "final agency action," within the meaning of section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 704 (West 1977); (3) whether the challenged agency action has or will have a direct and immediate impact upon the petitioners; and (4) whether resolution of the issues will foster, rather than impede, effective enforcement and administration by the agency.

*Alabama Power Co. v. F.E.R.C.,* 685 F.2d 1311, 1315 (11th Cir.1982) (quoting *Pennzoil Co. v. F.E.R.C.,* 645 F.2d 394, 398 (5th Cir.1981)).

The ripeness doctrine is designed to avoid "entangling [courts] in abstract disagreements over administrative policy." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Despite the aspect of discretion, a court's

determination that agency action is not "final agency action" ends its inquiry. The Court states in *SOCAL* that an FTC complaint "is subject to judicial review before the conclusion of administrative adjudication only if the issuance of the complaint was 'final agency action' or otherwise was 'directly reviewable' under section 10(c) of the APA, 5 U.S.C. § 704 [5 U.S.C.S. § 704]." 449 U.S. at 238, 101 S.Ct. at 492, 66 L.Ed.2d at 423.

To determine whether this case is ripe for review, we must first consider whether *Shell Oil* establishes that the EEOC may not engage in any investigatory activity if it has not filed a valid charge. We must then apply the guidance of *SOCAL* to decide whether issuance of a charge is final agency action.

### A. *Shell Oil*

■ Mississippi Chemical's assertion that it has a ripe claim is based on the premise that under *Shell Oil,* an invalid charge deprives the EEOC of jurisdiction. Consequently, the invalidity of the charge cannot be cured. Nothing in the language, reasoning, or holding of *Shell Oil* supports this contention.

First, as the district court noted in *Shell Oil,* the Court was concerned primarily with one issue:

The question presented in this case is how much information must be included in the charge and provided to the employer before the Commission may secure judicial enforcement of an administrative subpoena compelling the employer to disclose personnel records and other material relevant to the charge.

466 U.S. at 56, 104 S.Ct. at 1625, 80 L.Ed.2d at 49. The Court addressed only the portion of section 706(b), 42 U.S.C. § 2000e–5(b), that specifies the content of a charge.

---

3. The EEOC alternatively urges that we find jurisdiction lacking because none of the claimed bases for jurisdiction, listed above, is substantial. The EEOC urges that the "doctrine of insubstantiality" precludes jurisdiction under 28 U.S.C. § 1331, *see Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666, 94 S.Ct.

772, 776, 39 L.Ed.2d 73 (1974). At the agreement of the parties, the district court focused on ripeness. The district court did not err in exercising its jurisdiction to decide the ripeness question on the merits. *See Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

The Court held that "... the existence of a charge that meets the requirements set forth in [42 U.S.C. § 2000e–5(b) ] is a jurisdictional prerequisite to judicial enforcement of a subpoena issued by the EEOC." 466 U.S. at 65, 104 S.Ct. at 1629, 80 L.Ed.2d at 54.[4] Thus, the holding of *Shell Oil* does not directly concern the effect of an EEOC charge on the EEOC mandate to investigate.

Second, as stated by the district court, *Shell Oil* does not imply that a defective charge cannot, as an outgrowth of the investigation, be cured by amendment before the Commission seeks subpoena enforcement. The Supreme Court assumed that disputes about the content of the charge, or the notice given to an employer, are significant only if the EEOC seeks to enforce a subpoena. *See* 466 U.S. at 56, 104 S.Ct. at 1624, 80 L.Ed.2d at 49 (statement of question), at 58, 104 S.Ct. at 1625, 80 L.Ed.2d at 50 (*id.*), at 64, 104 S.Ct. at 1628, 80 L.Ed.2d at 54 (describing task as "construing EEOC's authority to request judicial enforcement of its subpoenas"), at 65, 104 S.Ct. at 1629, 80 L.Ed.2d at 54 (holding), at 72, 104 S.Ct. at 1633, 80 L.Ed.2d at 59 (relating to notice requirement, and at 80, 104 S.Ct. at 1637, 80 L.Ed.2d at 64 (*id.*). The Court emphasizes the importance of not impairing the third legislative purpose of Title VII, "the Commission's ability to investigate charges of systemic discrimination." 466 U.S. at 54, 104 S.Ct. at 1621, 80 L.Ed. at 41. Mississippi Chemical's argument is that the agency actions are futile and intrusive if the commissioner charge is not facially valid. These implications of *Shell Oil* are unsupportable. Requiring a valid charge as a prerequisite to judicial enforcement of a subpoena satisfies the statutory limitations on EEOC investigatory authority. *See Shell Oil,* 466 U.S. at 64, 104 S.Ct. at 1628, 80 L.Ed.2d at 54.

Third, *Shell Oil* based the description of the required content of a charge on a construction of regulations promulgated by the EEOC requiring that "[e]ach charge should contain ... [a] clear and concise statement of the facts, including the pertinent dates, constituting the alleged unlawful employment practices." 29 C.F.R. § 1601.12(a)(3) (1983), *cited at* 466 U.S. at 75, 104 S.Ct. at 1634, 80 L.Ed.2d at 60. "The statute itself prescribes only minimal requirements pertaining to the form and content of charges of discrimination. Section 706(b) provides merely that '[c]harges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires. 42 U.S.C. § 2000e–5(b) [42 U.S.C.S. § 2000e–5(b) ].' " 466 U.S. at 65, 104 S.Ct. at 1630, 80 L.Ed.2d at 55. "[A]bsent Commission regulations to the contrary, a charge might satisfy the statutory requirements even if it contained only a naked allegation of a violation of Title VII." 466 U.S. at 87, 104 S.Ct. at 1640, 80 L.Ed.2d at 68 (O'Connor, J., concurring in part and dissenting in part). In placing stricter requirements for adequacy of the charge on itself through regulation, the EEOC in no way restricted its investigative authority.

We conclude that the allegation that the EEOC has not complied with the *Shell Oil* interpretation of 29 C.F.R. § 1601.12(a)(3) does not state a claim that the EEOC lacks a statutory mandate to investigate.

Much of Mississippi Chemical's complaint is based on the argument that the refusal of the EEOC to provide more detail during its preliminary investigation is unfair. But, as noted, *Shell Oil* strongly indicates that a "notice of charge does not define the permissible scope of an EEOC investigation." 466 U.S. at 93, 104 S.Ct. at 1643, 80 L.Ed.2d at 72 (O'Connor, J., dissenting in part and concurring in part). All members of the Court agreed that when Congress amended the notice provision in 1972, it did not intend to use the notice requirement to limit the EEOC's ability to investigate charges of discrimination. *See* 466 U.S. at 75–76, 104 S.Ct. at 1634, 80 L.Ed.2d at 61–62 and 466 U.S. at 89, 104 S.Ct. at 1642,

---

4. The Court declined to reach the question whether compliance with the notice requirement of 42 U.S.C. § 2000e–5(b), which requires that notice of a charge be served on an employer within ten days of filing, was a prerequisite to enforcement of a subpoena.

80 L.Ed.2d at 70 (notice provision not intended to circumscribe EEOC's investigative authority). If the notice requirement of section 2000e–5(d) does not circumscribe EEOC investigatory power, a notice argument adds nothing to the jurisdictional argument.

The flaws in Mississippi Chemical's construction of *Shell Oil* simplify the finality analysis.

### B. *Finality*

■ As previously noted, *SOCAL* held that the issuance of an FTC complaint was neither "final agency action" nor "directly reviewable" under section 10(c) of the APA. The EEOC views *SOCAL* as dispositive. Mississippi Chemical cites *Abbott Laboratories* for the principle that courts interpret the concept of finality in a "pragmatic way." 387 U.S. at 149, 87 S.Ct. at 1516, 18 L.Ed.2d at 692. Mississippi Chemical makes two arguments for a pragmatic interpretation of the charge as a final agency action. The first argument embodies the interpretation of *Shell Oil* that we have rejected. We will not repeat that discussion here.

Mississippi Chemical also argues that the challenged action is having a direct and immediate impact on Mississippi Chemical, one of the elements of finality discussed in *SOCAL.* 449 U.S. at 239, 101 S.Ct. at 493, 66 L.Ed.2d at 424. Much of this argument is circular, since the alleged impact is injury to a hypothetical statutory right of Mississippi Chemical to a valid charge. Mississippi Chemical also argues that the issuance of the charge burdens it by: (1) requiring it to retain masses of records that might relate to the charge, (2) forcing it into a "quasi-contempt" posture of refusing to obey a subpoena, and (3) inflicting a stigma that allegedly hampers recruiting of minority and female employees. These arguments are without merit. The claimed burdens are typical of those attendant upon any government investigation and in part are a function of the regime of law created by Title VII.

The requirement for employers to keep records is a feature of Title VII independent of a specific charge. C.F.R. § 1602.14 requires an employer covered by Title VII to retain all personnel records for six months after they are created. When a charge of discrimination has been filed, the employer must retain all records relevant to the charge until the dispute is resolved. *See* 466 U.S. at 78 n. 35, 104 S.Ct. at 1636 n. 35, 80 L.Ed.2d at 62 n. 35. The additional burden of retaining records after a charge of discrimination has been filed is of little significance. Mississippi Chemical complains that it has insufficient notice of which job categories require record keeping. As noted by the EEOC, the Supreme Court cited with approval *Blue Bell Boots, Inc. v. EEOC,* 418 F.2d 355, 358 (6th Cir. 1969), which held that charges alleging discriminatory charges were sufficient to allow the Commission to obtain "records concerning every employee in every job category." *Shell Oil,* 466 U.S. at 69, n. 20, 104 S.Ct. at 1631, n. 20; 80 L.Ed.2d at 57, n. 20. Thus, greater specificity in the charge would not relieve the company of a full obligation to maintain records that might bear on a pattern of racial or sex discrimination. Furthermore, "mere litigation expense, even substantial and unrecoupable costs, does not constitute irreparable injury." *SOCAL,* 449 U.S. at 244, 101 S.Ct. at 495, 66 L.Ed.2d at 427.

The contempt argument lacks merit. Given its right to oppose a subpoena enforcement action, Mississippi Chemical may refuse to obey a subpoena without committing contempt. Finally, to recognize an EEOC investigation as a hindrance to hiring minorities and women would fly in the face of the congressional mandate to EEOC to investigate and conciliate. We conclude that the harms Mississippi Chemical alleges are legally insubstantial, speculative, or attributable to causes other than the bare existence of the charge.[5]

---

5. We acknowledge the concern of the district court with the EEOC's delay in seeking enforcement of the subpoena. We agree with the district court that such a concern would be better

We hold that the issuance of a commissioner's charge with the EEOC is not a "final agency action" under section 10(c) of the APA, 5 U.S.C. § 704. The validity of the commissioner charge issued on February 12, 1981, alleging that Mississippi Chemical Corporation was engaged in a pattern or practice of unlawful discrimination is therefore not ripe for review.

The order of the district court is affirmed.

AFFIRMED.

addressed by a statute of limitations or by equitable defenses. We, of course, express no opinion of the merits of an equitable defense to action taken by the EEOC after a period of time has elapsed.